I didn't ask so many questions if Jane was here to ask them. I feel I have to ask hers as well as mine. This is United States versus Hiep Tran. Are you with the Philadelphians? Yes. Still difficult for my neighborhood anyway. I live a mile from here and it was difficult. My cab didn't show up this morning and we borrowed a neighbor's car for me to get here. We're all trying the best we can. Where is he? Mr. Bradley picked me up. Because the marshals aren't here either. May it please the court. Good afternoon. My name is Tony Nicole Benedetti. I'm an attorney with the law office. Can you hear me? How are we doing with the tape? My name again is Tony Nicole Benedetti. I'm an attorney with the law offices of A. Charles Peruto Jr. Mr. Peruto, I'm here on behalf of Mr. Peruto, who was court appointed counsel for the pro se appellant Mr. Hiep Tran. I didn't realize he was court appointed. Thank you very much. We had filed an Anders brief previously and then moved to withdraw. And we told him that we didn't accept the Anders brief because it didn't really answer the issue that Mr. Tran had raised with respect to the difference between 888 plants and 1,000 because he was of 1,000 plants. Yes. Okay. So we are here today and it's our position that the lower court erred when it rendered appellant sentence because the sentencing was based on a mistake in its finding of fact. We're challenging the amount that appellant Tran. Really loud. Sorry, I'm trying to lower this a little bit. Greg, can we push that down? We used to be able to. I don't know. Not that. But what about is this one of the. Oh, thank you. Oh, OK. We don't no longer does. Oh, it used to go up and down. I know you have laryngitis. So don't talk. Everything else has happened. We're challenging the amount that the court vacate appellant sentence and remand for sentencing. As you are aware, there are 888 plants recovered by the agents in the Birdsboro house. Nothing more. Certainly not 1,000 plants or more as he was convicted of. Appellant Tran was charged with manufacturing 1,000 plants or more. But the overt act here. Well, he was charged with conspiracy. Yes, conspiracy. I apologize. It's different. It's different. I mean, he's he was charged with manufacturing also. Yes, but he was charged. I double checked that this morning. He was charged with conspiracy to manufacture. Mm hmm. And I'll get to that, too. OK, thank you. But the overt act here is actually cultivation of the 888 plants. And there was no evidence produced to show that the appellant Tran and his co-conspirators were going to continue growing past this initial grow at the house. And it's actually speculative to have considered that the indictment actually charged conspiracy to manufacture a thousand plants or more at this house under the control of Mr. Tran. However, the government's cooperating witness who testified at Mr. Tran's trial claimed the house was still in the process of getting set up. He also said that he was not aware of a prior grow at the house. So the government did not put forth any evidence of additional plants in the house by the basis of his testimony. In addition, the government relied on direct observation and circumstantial evidence to allege the conspiracy produced a thousand plants. They could not prove by direct evidence alone any more than 888 plants. The amount actually recovered. The government then chose to use phone tap evidence and its cooperating witness testimony. What evidence? Phone tap evidence. Phone tap. Mm hmm. So they actually don't come forward and show discarded or dead plants on the premises as evidence of the number of plants involved in the conspiracy to manufacture marijuana. But they do use recordings of appellant and others. Telephone conversations where the appellant and his conversation partner were speaking in Vietnamese. Vietnamese slang no less. So the government took these recordings of whatever quality they were, provided them to a translator and then had an agent interpret someone else's interpretation of appellant Tran's conversation. Of course, without the benefit of contacts. Assuming all of that was done to the best ability possible, as I'm sure it was, there of course is room for error. In addition, Agent Elwanger testified at the trial about tap telephone calls, in particular the call between Mr. Tran and his girlfriend, Jenny Tran, where they discussed the number 19. The agent knew by his testimony that 19 referred to 19 pounds of marijuana. However, the agent on cross came from this house or were sourced or purchased elsewhere. Yet these 19 pounds were converted into approximate number of plants and then pinned on appellant Tran as having been manufactured by part of the conspiracy in that house. And his sentencing and conviction rely on this conversation. The trial judge himself actually acknowledges at page 7 of the trial transcript in the findings of fact section that it may be that the government failed to prove that a thousand plus plants were in fact produced, but Tran is convicted on the intentions of him and his colleagues. So it is clear that the court considered these telephone calls. And in addition, the next thing I'm going to speak about an observed alleged purchase of marijuana in its sentencing and conviction. The government also contends that federal agents witnessed a sale of packaged believed to contain 5 to 10 pounds of marijuana. And the agent then testified that 10 pounds can approximately at times equate to 200 plants. But that conversion always depends on the quality of the plants, the conversion that is to plants to pounds. So what we have here is the government surveillance witnessed a handoff of a package that may be the size of potentially 5 to 10 pounds of marijuana and 5 to 10 pounds might be equal to 100 to 200 plants. So automatically 100 to 200 plants were tacked on. To make matters worse, that package was never recovered or tested. So there is no certainty that marijuana was actually contained in the package. Yet again, this unknown package of unknown quantity is counted as equal with the plants that were seized by the government at the grow house. We believe that this is insufficient proof and that the trier of facts inclusion of the observed unknown unquantifiable package to determine a conspiracy existed to manufacture 1000 plants was not reasonable. While experience of an agent is certainly something to consider. We're dealing here with someone's life and their sentencing. Five years in jail. The difference between less than 1000 plants and 1000 plants under the sentencing. We believe that by considering this untenable circumstantial evidence as the number of increased from 888 to over 1000 plant threshold and had this charge had this conviction made for a defendant after making this unreasonable finding. The district court was required to impose the mandatory sentences in this case, yielding Mr. Tran. As you just said, Your Honor, 120 months or 10 years in prison and five years supervised release. There's clear doubt here that Mr. Tran's translated cell phone conversations and delivery of a package surmised to contain marijuana. Deaf definitively amounted to more than the requisite 112 plants to get over the threshold of 1000 and without having the actual physical drugs involved in the transaction and without the certainty that the 19 pounds discussed were actually tied to this grow house. It cannot be reasonably believed to have more than 888 plants here. Ms. Benedetti, are you making anything of the fact that the judgment talks in terms of 100 rather than 1000? The only person who picked that up was my law clerk. Your brief, not your, let's say your office's brief on behalf of the defendant didn't raise that issue. Is that a viable issue or shall we accept the government's position that it was clerical error? I think you should accept the government's position on clerical error. While there may have been some uncertainty about what actually constituted the 1000 during the trial, at the end the judge came to the conclusion that it was 1000. So I think it somehow became an error in the process and that no one noticed because 100 and 1000, all it is is one zero missing. I think we appreciate your candor in that connection as well as the fact that Mr. Prudo took this on the court appointment. Do you have any questions? Thank you. There's half your argument, Mr. Livermore. But she makes a very good argument with respect to, you'll have to pick up the... There we go. Good afternoon. My name is Robert Livermore. I'm here on behalf of the United States. Your Honor, I was going to have two points to make this afternoon. Apparently now I have one. If the court has any questions, perhaps we should handle the judgment first. It doesn't seem, unless the court has any questions, we're going to rest on our... I always thought we couldn't change the judgment. We have to do it within a certain amount of time, but I gather with the concession that it was a clerical error. We'll accept that. Is that all right with you? Yeah, but what is the procedure on that? Do we have to go back to the discipline? No, the government's position is that's not necessary. In our letter in response to the court's question on that, we cited the Eighth Circuit case of Crowder. And what they found in that case is as long as it does not affect the defendant's substantial rights... How can it not affect his substantial rights when we're dealing with five years in jail? Well, because if it's anything but a clerical error, if there's any suggestion in the record that this was anything but a clerical error, then you're absolutely right. In this case, it should go back down to make that correction. But in this case here, it was definitely a clerical error. You can read the transcripts. You can read Judge Fulham's factual findings in the record. You can read the transcript of the sentencing here. And there's absolutely no question that the defendant was convicted of a thousand plants. That's crystal clear within the record. If that wasn't crystal clear, then you're right. The case should be remanded for clarification. If I were in your office, though, and I thought your answer in your letter said that you had no objection to sending this down so that the district court could correct the error, and if I were in your office and knew that Mr. Trans, who writes letters, and apparently with some help, if you look at his Anders brief, his brief as distinguished from the Anders brief, he's got some help there, or else he's highly educated. And she says he's Vietnamese, so it doesn't seem right. I would want to be sure that all the I's were dotted and all the T's were crossed, or else you'd get an ABS and all sorts of things coming. But that's what I would do if I were working for your boss. Go to the second question, then. Well, the second question is, is there sufficient evidence in the record to support the Trier Facts findings? Yeah, the difference from 888 plants, how do you get to a thousand plants? When you say sufficient evidence to support the findings, what do you mean by that? For the purposes of sustaining the conviction or the sentence, or both? It's both, Your Honor, because he has to have sufficient evidence for the factual findings that the object of the conspiracy was to manufacture a thousand plants. That factual finding, which obviously is part of the conviction in this case, and then that leads to the sentence, because you have to make that factual finding, in other words, to get the 10-year mandatory minimum. So in this case here, Your Honor, there has to be sufficient factual findings in the record to support that conviction. And I need not remind this Court the extremely high burden that's on the defendant to show that, and that all inferences in the record... Wait, wait, wait, wait. Whose burden is it? This is a criminal case. It's your burden to show that there was a conspiracy to manufacture 1,000 marijuana plants, right? Yes, Your Honor, absolutely. What is the defendant's burden? Well, the defendant has to show, for this appeal to be successful, that there was not a sufficient factual finding in the record, that no reasonable trier of fact could have come to that conclusion. And you have to take all of the inferences... Oh, I'm not sure about that. I mean, that's an interesting change in the burden of proof. I didn't know that. I mean, it's the defendant's appeal. Yes, Your Honor. But I never heard somebody from your office suggest that the burden shifts as soon as you get up on appeal. Well, Your Honor, perhaps I misspoke. But my point is, Your Honor, is that essentially what the appellant is doing here is repeating the closing arguments that Mr. Peruto made to the Court in the trial. And they're arguing that certain inferences from the evidence should be made in the defendant's favor. And this is the job of the trier of fact. In this instance here, it was Judge Fulham's job to make those determinations and to make those factual findings. And in this case here, he weighed the evidence, he listened to the arguments from both sides, and he made the factual finding that, in this case here, that the object of conspiracy was to manufacture more than 1,000 plants of marijuana. Let's get past that and address this question that's bothering me. You know, at least for sentencing purposes, the question is, you know, how do you convert, you know, pounds of, I'll call it harvested marijuana, right, into live plants? And it appears, at least for sentencing purposes, it appears to me to be a circuit split as to how that's done. And, you know, at least one or two circuits seem to be on the side of the defendant that, you know, the conversion that Judge Fulham made is an error as a matter of law. I disagree, Your Honor. If you look at the cases which the appellant cites in his supplemental brief, what he's saying is that if you have a defendant who is caught with, say, 800 plants and 25 pounds of marijuana, it is inappropriate and unlawful to jump to the conclusion that he must have manufactured these 25 pounds of marijuana with no other evidence. Well, that's not the point I'm making. It's not that he manufactured. The question is, how many plants should you attribute to that, whatever pounds that is? That's the question. Well, that's a factual finding for the trier of fact. The government has to prove beyond a reasonable doubt. Well, but the guidelines say there's a certain procedure to use, right? Judge, unless I'm mistaken, I don't believe that the guidelines are implicated in this particular case here. The government has to prove beyond a reasonable doubt as part of its case that at trial, not at sentencing, the government has to prove at trial beyond a reasonable doubt that the defendant conspired to manufacture more than 1,000 plants. I don't believe that the guidelines are implicated here. The sentencing guidelines, anyways. Well, are you familiar with the Second Circuit case, U.S. v. Bloom, right? Not off the top of my head, Your Honor. Bloom doesn't, at least for, as I say, for sentencing purposes, doesn't seem to sanction the procedure used in this case, although other circuits seem to sanction it. Judge, I don't think we get to, I don't think the conviction pertains to sentencing. In this case here, I think maybe it would be easier to understand if this was a jury verdict. If this case had come to a jury trial, what would happen is the verdict form would go to the jury, the jury would have to check a box indicating guilty or not guilty, and then later on the box, the jury would have to select how many plants were involved in the conspiracy, and the jury would have to make that factual finding. Let me back up. First of all, it's pretty clear, it's not controverted that 888 plants were found, right? That's correct, Your Honor. All right, so the question is, how did the district court get to 1,000? What procedure did he follow? Well, it's interesting because in studying the record, and I think I did a poor job in expressing this in my appellate brief, because what I did, the error that I made in my appellate brief is I repeated the same argument that I made in the district court. I think before you go off on that, you have to answer Judge Tshishima's question directly. Yes, Your Honor. Judge Tshishima said, how did the district court, I think, get from 888 to 1,000? Is that fair? Why don't you answer that before you confess error? Yes, Your Honor. And the way Judge Fulham got to that conclusion was he looked at the intention of the defendant and the object of the conspiracy. And he found that the object of the conspiracy was to manufacture more than 1,000 marijuana plants. It's just like any other case, Your Honor. You have an object of conspiracy, and the success of the conspiracy is immaterial. Unless he has an agreement, and in this case here, the defendant had an agreement to manufacture more than 1,000 plants. And in this case here, it's irrelevant whether he actually did. No, no, no, but see, they were back to my point. It is relevant for sensing purposes. You can't send somebody, you know, on the basis of 1,000 plants, can you, unless there are 1,000 plants? I disagree, Your Honor. I don't think it's a guidelines matter, Judge. It's a conspiracy to manufacture. You don't think sentencing is a guideline matter? In this instance here, because there's the mandatory minimum which is involved. So in this case here, the sentencing guidelines, if I believe were actually... Overridden by the statutory minimum? Yes, Your Honor, I believe the guidelines were actually below the statutory mandatory minimum. So it was the statutory mandatory minimum which controlled. And the statutory mandatory minimum, of course, was triggered by the 1,000 plants finding. And again... So what you're saying is all you need is... You need a conspiracy to manufacture 1,000 or more to establish guilt, and you don't actually need 1,000 plants? No, Your Honor. I mean, that's what you're saying, right? As long as you have the agreement, the same thing in any other drug case, as long as you have an agreement to distribute, you know, 5 kilograms or more of cocaine, you don't actually have to go through with it. But didn't the district court go through it by adding the harvested marijuana to the marijuana plants? I'm not sure about that, Judge. That was my argument to the district court, is that he should add the 880... He probably accepted your argument. I don't think he did. I was rereading that this morning. I don't think he accepted my argument, because if you... And counsel actually quoted this in her argument here this morning, is that what Judge Fulham said was that he found it immaterial whether or not there was actually plants that were harvested previously. What was important here was the defendant's intention. Did he have an agreement? Did he have the intention to manufacture 1,000 or more plants? And that's what Judge Fulham found. And that's what Judge Fulham found, is that he had the intention, he had the agreement to manufacture more than 1,000 plants. And what Judge Fulham said is whether or not he actually did that was immaterial. My argument to Judge Fulham was that he actually did do that, because you had the 888 plants they found, plus all these other plants that you heard talking about on the wire. And it was a simple matter of math to add up the 888 plants, plus the circumstantial evidence of the prior harvests that were found on the T3 phone calls. Weren't there two different ratios given, though, to get to the difference between 888 and 1,000? One, there was the testimony of the agent. Yes, Your Honor. And then there was some other evidence in there, and they weren't the same. I'm not aware of any other evidence, Your Honor. It was the testimony of the agent who gave an approximate range for how many plants would be required, and even at the low end of that range, it would push them over 1,000 plants. And that's what my argument was, Your Honor, was that if you tally up all of the plants that we've shown through circumstantial evidence that he manufactured, it pushed them over 1,000 plants. And what Judge Fulham did was he said it's irrelevant, or it's not irrelevant, but he said it doesn't matter. It's not determinative that the government proved that he actually manufactured 1,000 plants. What's determinative is that he had the intention of manufacturing more than 1,000 plants. And that's what, at least the way I read Judge Fulham's factual finding. How did they know that these two Vietnamese gentlemen had conspired to manufacture more than 1,000 plants? How did Judge Fulham know? Well, the evidence took the form of the dozens, and I see a amount of time if I may interject. No, no, go ahead. As I said before, there's a lot of stuff out there. The evidence took the form of the dozens and dozens of phone calls which the government introduced at trial. And these are summarized in the pre-sentence report beginning on page three. And what you have, you have dozens and dozens of phone calls which the DEA recorded over a several-month period beginning in December of 2006 in which the defendant is talking to his co-conspirators talking about manufacturing plants. And they're talking about how the plants are growing. They're talking about what fertilizers to use. They're talking about various things pertaining to the manufacturing of plants. Now, the most telling phone call is the one phone call which has been mentioned by counsel where he's talking about the 19 pounds. And that's specifically he's talking about just harvesting. And it's not just he mentioned 19 pounds. He's talking to his girlfriend about the fact that he just harvested the 19 pounds. Yeah, but Ms. Benedetti says, but we don't know where those 19 pounds came from. As I understand what she said. Well, what she's making an argument, which was the same argument or similar argument that counsel made to the judge in the district court, and that is you should make an inference from this or you should not accept the government's inference from this evidence that these plants were harvested. And the judge, but that is certainly circumstantial evidence. And when you look at the entire phone call, and he just didn't mention, hey, I have 19 pounds of marijuana. He's talking to his girlfriend about it. This is a very long phone conversation. He's talking about moving the plants from upstairs in the house to downstairs in the house. He's talking about how much work he's doing. He's explaining why, because there was a dispute, because the girlfriend, if you listen to the phone call, the girlfriend was expecting that there was going to be more marijuana. And at least it's at least an inference that prior fact was entirely wrong. Absolutely. Absolutely. Thank you. Thank you. Thank you. Thank you. I disagree. This right now? I respectfully disagree with counsel that the defendant had an agreement to manufacture more. I don't believe that there was proof of that put on at trial. Couldn't the district court have inferred that? Certainly they could have inferred that, and I believe that's what they did, and I don't believe it was correctly done. He's a he. He's a he. When I started, there weren't she's, but that's all right. This time it's a he. Yes, I don't believe he properly considered the evidence. While the phone calls existed, they were subject to interpretation by a few people prior to getting themselves before the court. The government witness did not come in at trial and say, yes, we had an agreement. To produce a thousand plants or more, that was not his testimony. He said the grow house had just been built and he came in to help out and his job was caretaking. But he didn't say what their intentions were or how much they were planning on selling. In fact, he's he said Mr. Tran took care of all of that. And that he had nothing to do with that. So I don't think the government's witness was able to justify that an agreement to manufacture more than a thousand plants actually existed. And the intention of them to actually manufacture and produce the object of the conspiracy just wasn't put before the court. Well, if the building was still going up and they were going to produce more, couldn't the district court infer that? From the fact that they did grow 888 and they had some other harvested marijuana around that the conspiracy intended to produce more? Because this wasn't a building that was winding down, it was a building or a workshop that was moving up. Well, certainly that could be inferred, but it's our position that that's too speculative. Thank you. Thank you very much. It was well argued and we will take the matter under advisement. We will get a copy of the disk to Judge Roth and we will then confer. Thank you both. The Spanish word is ojala. In Yiddish it's olivay, but oh that it were. Ojala. That's in Spanish. O-J-A-L-A. It means oh that it happens like that. It's a subjunctive.